UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAWRENCE KOSA, et al.

       Plaintiffs,

                                          Civil Case No. 13-cv-11786

v.                                    Honorable Patrick J. Duggan

INTERNATIONAL UNION UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS
OF AMERICA, LOCAL 659, INTERNATIONAL
UNION UNITED AUTOMOBILE, AEROSPACE
AND AGRICULTURAL IMPLEMENT WORKERS
OF AMERICA, GENERAL MOTORS, LLC, and
AUTOMOTIVE COMPONENT CARRIER, INC.,

       Defendants.
_____/

## **OPINION AND ORDER**

On April 20, 2013, 257 employees, former employees or retirees of

Defendant Automotive Component Carrier, Inc. ("ACC") filed this lawsuit

alleging three counts: (I) violations of Section 301 of the Labor and Management

Relations Act ("LMRA"), 29 U.S.C. § 185; (II) violations of the duty of fair

representation under Section 9(a) of the National Labor Relations Act ("NLRA"),

29 U.S.C. § 159; and (III) common law fraud under Michigan law.  In addition to

ACC, Plaintiffs are suing General Motors, LLC ("GM"), Local 659 of the

International Union United Automobile, Aerospace and Agricultural Implement

Workers of America ("Local Union"), and the International Union United Automobile, Aerospace and Agricultural Implement Workers of America ("International Union").  Presently before the Court is the International Union's motion to dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6) on July 29, 2013.  The motion has been fully briefed and the Court held a motion hearing on October 30, 2013.

At the conclusion of the motion hearing, the Court granted Plaintiffs' request to file a second amended complaint to set forth additional facts relevant to the arguments for dismissal set forth in the International Union's motion to dismiss. The Court also asked Plaintiffs to file a document that their counsel referred to at the hearing, but which had not been provided to the Court.  The Court delayed ruling on the International Union's motion until Plaintiffs' amended pleading and the requested document were filed and Defendants had an opportunity to respond thereto.  On November 4, 2013, Plaintiffs filed the requested document and their Second Amended Complaint (ECF Nos. 32 & 33, respectively.)  On November 18, 2013, the International Union filed a supplemental brief in support of their motion to dismiss addressing Plaintiffs' filings.  (ECF No. 38.) The motion is now ripe for resolution.

-2-

## I.     Applicable Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . ."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007).  A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 , 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct at 1966).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing

-3-

*Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668, 129 S. Ct. at 1949. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965-66). Although a court ruling on a Rule 12(b)(6) motion "primarily considers the allegations in the complaint," matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be considered. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (citation omitted). The court also may consider documents incorporated by or referred to in the pleadings, as well as documents that are central to the plaintiff's allegations even if not explicitly incorporated by reference. *See Weiner v. Klais and Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

-4-

## II.     Factual and Procedural Background

The International Union's motion raises the issue of whether Plaintiffs exhausted their internal union remedies prior to filing this lawsuit.  The facts leading to Plaintiffs' filing of their grievances are set forth in this Court's recent opinion and order deciding a motion to dismiss filed by GM.  The Court assumes the reader's familiarity with those facts.

As set forth in that decision, on July 23, 2009, Plaintiff Lawrence Kosa asked Local Union committeeman Terry Sims to file a grievance based on a 2009 Special Attrition Plan ("SAP") reached by GM, ACC, and the International Union, which was set forth in a Memorandum of Understanding ("2009 MOU").  (2d Am. Compl. ¶ 24.)  According to Plaintiffs' Second Amended Complaint, Kosa sought to file a grievance "because he had discovered that instead of just three options being presented to employees by ACC or GM, that there had actually been as many as 17 options given to the union by ACC and GM for the SAP."  (*Id*.)  Plaintiffs allege that Kosa also learned that an earlier agreement between ACC, GM, and the International Union gave employees guaranteed rights to "flow-back" into GM and benefit rights in the event ACC closed and that Plaintiffs were never informed of those rights.  (*Id*. ¶ 26.)  Local Union representatives allegedly refused to file a grievance.  (*Id*. ¶ 28.)

-5-

Article 33 of the UAW Constitution requires members to "exhaust fully the individual or body's remedy and all appeals under this Constitution and the rules of this Union before going to a civil court or governmental agency for redress." (Int'l Union's Mot. Ex. B, Art. 33 § 5.) The UAW Constitution grants the Public Review Board ("PRB") final and binding decision-making authority and the authority to address alleged violations of any UAW Ethical Practices Code adopted by the International Union. (*Id*. Art. 32 § 3.) The PRB is comprised of six members who are "impartial persons of good public repute not working under the jurisdiction of the UAW or employed by the International Union or any of its subordinate bodies." (*Id*. Art. 32 §§ 1, 2.)

Article 32 of the UAW Constitution sets forth the procedures for handling complaints related to alleged violations of any UAW Ethical Practices Code. (*Id*. § 5.) Article 33 deals with other matters. Pursuant to Article 33, the appeal procedure depends on the organizational level at which the challenged decision or action occurs. The "normal route of appeal" which is followed in all cases, except where the UAW Constitution specifically provides for a different route, is:

> FIRST, to the membership or delegate body immediately responsible
> for the official, officer, action or decision under challenge; SECOND,
> to the International Executive Board, unless the appeal begins there;
> and THIRD, to the Convention Appeals Committee or Public Review
> Board, as may be appropriate.

-6-

(*Id*. Art. 33 § 2(a).)  Section 2(a) then sets forth illustrations of the "normal route of appeal" for certain common cases:

> In any challenge to the handling or disposition of a grievance: Where the challenge is against a Local Union committeeperson, steward, Bargaining Committee, officer or other Local Union official the levels of appeal are first to the unit of an Amalgamated Local Union, then to the Union; then to the International Executive Board and then to the Convention Appeals Committee, or where appropriate the Public Review Board.  Where the challenge is against an International Representative, Regional Director, International Officer or National Department the levels of appeal are first to the International Executive Board, and then to the Convention Appeals Committee, or where appropriate to the Public Review Board.

(*Id*.)  Thus "[t]he International Executive Board has *appellate* jurisdiction to consider and decide all appeals submitted to it from any decision or action of a Local Union, Amalgamated Local Union or other subordinate body" (with exceptions not relevant here) and "*original* jurisdiction to consider and decide all appeals submitted to it from any decision or action of an International Officer, Regional Director, International Representative or any arm of the National Department of the International Union" (with exceptions not relevant here).  (*Id*. § 3(d) (emphasis added).)

On November 15, 2009, Kosa filed an "ACC Appeal" with the Local Union AC Unit Executive Board on behalf of approximately 280 Local Union members and employees who were EBU Red or Yellow Status employees or NBU Status

-7-

employees.  (2d Am. Compl. ¶¶ 35, 36, 45; *see also* ECF No. 32.)  The appeal was filed under Article 33 of the International UAW Constitution for Plaintiffs' "right to due process of communication and procedures governing the voting and approval through the membership of any and all contractual offers that were being offered to [them] at the time they were presented to [them] through [their] Bargaining Committee and/or International Representatives of the UAW . . .." (ECF No. 32 Pg. ID 747; *see also* 2d Am. Compl. ¶ 37.)  The appeal focused on the failure of representatives from the Local Union and arguably International Union (hereafter jointly "UAW") to convey information to the members concerning the negotiations surrounding the SAP.  (ECF No. 32 Pg. ID 747-49; 2d Am. Compl. ¶¶ 37-40.)  This included the failure to inform members of their flow-back rights:

> Whereas, during the briefing meeting [on the tentative 2009 SAP] called by the ACC Shop Committee, Red Dot and Yellow Dot members were told that they did not have flow back rights into a GM unit or that they would be restricted under a formula ratio among other affected GM, Delphi or other units being reduced . . ..

(ECF No. 32 Pg. ID 749; 2d Am. Compl. ¶ 42.)

The Local Union ACC Unit Executive Board voted to deny the appeal on April 16, 2010, a decision which was upheld by the Local Union Executive Board on June 11, 2010.  (2d Am. Compl. ¶¶ 46, 48.)  Plaintiffs filed an appeal with the

International Executive Board ("IEB") on July 8, 2010.  (*Id*. ¶ 49.)  After holding a

hearing, the IEB denied the appeal on January 30, 2012.  (*Id*. ¶ 50.)  Officials from

the International Union represented the Local Union at the hearing.  (*Id*.)

According to a subsequent order of the Public Review Board ("PRB"), the

primary focus of Plaintiffs' testimony during the hearing before the IEB "was the

Unit's failure to communicate with them about an [sic] alleged seventeen buyout

offers made by management prior to the negotiation of the SAP."  (Int'l Union's

Mot. Ex. C at 1.)  The order reflects that Plaintiffs' complaint also addressed their

flow-back rights:

> The hearing officers' report also addresses other points raised
> by appellants such as their complaint that the flow back options were
> changed after the Special Attrition Plan was ratified.  Their report
> points out that the plan's election form specifically advised
> participants that other separation benefits might be available in the
> future.  The hearing officers concluded that appellants had not cited
> any Constitutional or contractual basis for relief.

(*Id*. at 2, footnote omitted.)

On February 9, 2012, Plaintiffs appealed the EIB's decision to the PRB.  (2d

Am. Compl. ¶ 51.)   The International Union filed its position statement with

respect to the appeal on April 4, 2012.  (Int'l Union's Mot. Ex. C at 3.)  On May 7,

2012, Plaintiffs filed a response through their counsel, Lynn H. Shecter.  (*Id*.)

Shecter asked that the PRB request further information regarding Plaintiffs' claims,

and was advised to file a motion explaining why this material was not presented earlier. (*Id*.) On June 4, 2012, Shecter submitted a brief on Plaintiffs' behalf explaining their request to supplement the record. In the brief, Shecter provides *inter alia* that the IEB misstated Plaintiffs' position: that they were not claiming an entitlement to be presented with every offer made by management; but that they believed their local representative deliberately protracted negotiations and rejected favorable offers to benefit himself. (*Id*. at 3-4.)

In an Order of Dismissal and Remand dated July 24, 2012, the PRB concluded that the allegations in Shecter's brief concerning the local representative's behavior had to first be investigated by the IEB pursuant to the UAW Constitution. (*Id*. at 4.) The PRB therefore remanded this portion of Plaintiffs' appeal to the IEB. The PRB dismissed the portion of Plaintiffs' appeal concerning the negotiation of the 2009 MOU, concluding that this was part of the International Union's collective bargaining policy and "Article 33, § 3(f) [of the UAW Constitution] prohibits the PRB from reviewing in any way an official bargaining policy of the International Union." (*Id*. at 2.)

On remand, after conducting an investigation and holding a hearing, the IEB concluded that the union representative had not acted improperly. The appeal was then returned to the PRB, which issued a final decision denying the appeal on

-10-

January 22, 2013.  (2d Am. Compl. ¶ 52; Int'l Union's Mot. Ex. D.)  In its

decision, the PRB focuses on Plaintiffs' claim that the local unit Chairperson failed

to inform members of the additional offers presented during the SAP negotiations.

(*See* Int'l Union's Mot. Ex. D.)  The PRB refers at least twice to assertions by

Kosa concerning the International Union.  First, it quotes from Kosa's response to

an inquiry from the staff of the International Union's President during his initial

appeal to the IEB, where Kosa wrote:

> "A statement made to the membership at the informational meeting on
> June 7, 2009, by Jim King (International Benefits Rep.) was 'If this
> MOU does not pass on Wednesday (June 10, 2009), Penske would
> shut their doors on Thursday (June 11, 2009), and you will get
> nothing.'  This sounded a lot like coercion in my opinion, as it did to
> many of my fellow brothers and sisters who have also signed said
> appeal."

(*Id*. at 5 (footnote and citation to record omitted).)  Later, the PRB refers to Kosa's

"suggest[ion] that the Union coerced ratification of the 2009 SAP by telling the

membership that ACC would shut its doors if the 2009 SAP were not ratified" and

failing to inform members of flow back rights into GM.  (*Id*. at 15.)

Following the PRB's final decision, Plaintiffs filed the instant lawsuit in

which they allege violations of the LMRA, NLRA, and fraud under Michigan law.

In Count I, Plaintiffs allege that ACC and GM failed to honor the terms of a labor

agreement in violation of the LMRA, and that UAW representatives withheld and

misrepresented information to members during the 2009 SAP negotiations and

ratification process in violation of their duty of fair representation under the

LMRA.  (2d Am. Compl. ¶ 65.)  In Count II, Plaintiffs allege that the actions of the

UAW representatives violated their duty of fair representation under the NLRA.

(*Id.* ¶ 68.)  Lastly, in Count III, Plaintiffs allege that those actions constitute fraud

in violation of the common law.  (*Id.* ¶ 71.)

### III.    International Union's Arguments in Support of its Motion to Dismiss and Plaintiffs' Response

The International Union argues in its motion to dismiss that Plaintiffs failed

to exhaust the internal appeal procedures set forth in the UAW Constitution before

proceeding with this action.  According to the International Union, Plaintiffs'

general allegations in their Second Amended Complaint concerning exhaustion

conflate the Local Union and International Union and therefore do not explain how

they satisfied the separate and specific procedures for grieving a claim against the

International Union.  The International Union contends that Plaintiffs did not

follow the procedures applicable to claim(s) against an International

Representative, Regional Director, International Officer or National Department, as

they filed their initial grievance with the Local Unit and the UAW Constitution

confers original jurisdiction over such claims on the IEB.

Additionally, even if Plaintiffs are considered to have properly brought their claim against the International Union initially, the International Union argues that they did not exhaust the claim by pursuing a final appeal to the PRB. Plaintiffs' appeal to the PRB, the International Union argues, focused on the Local Union leadership rather than the actions of International Union representatives.

In the supplemental brief filed in response to Plaintiffs' Second Amended Complaint, the International Union argues that the amendment fails to cure the above deficiencies.

The International Union argues that the Court must dismiss Plaintiffs' LMRA claim because Plaintiffs failed to exhaust the UAW Constitution's grievance procedures and, as a result, the statute of limitations applicable to the claim was not tolled and expired. The International Union contends that Plaintiffs are required to exhaust their NLRA breach of fair representation claim as well, citing *Pratt v. UAW Local 1435*, 939 F.2d 385, 388-90 (6th Cir. 1991). In its motion, the International Union only addresses Plaintiffs' fraud claim in a footnote on the last page of the brief, in which it states:

> Plaintiffs also allege that the International Union and Local 659 acted "jointly and severally" to violate the duty of fair representation under NLRA §9(a) . . . and to engage in common law fraud. . . . For the reasons discussed above, the Complaint does not assert a valid claim of joint and several liability.

-13-

(Int'l Union's Br. in Supp. of Mot. at 18 n.10.)  In the supplemental pleading filed after the motion hearing, however, the International Union raises preemption as a basis for dismissing Plaintiffs' fraud claim.  (ECF No. 38 at Pg ID 852-53.)

In their response to the International Union's motion, Plaintiffs argue that the International Union was on notice that their appeal to the IEB and PRB raised claims against it.  Plaintiffs contend that the International Union was involved in the appeals process, including submitting its position regarding Plaintiffs' claim and having its President Bob King sign the pleadings.  Further, Plaintiffs point out that the International Union filed a response to the PRB's remand order in which it claimed only that Plaintiffs' appeal was untimely.  Plaintiffs argue that the International Union therefore waived its challenge to the appeal based on other procedural grounds, such as their failure to file a separate grievance against the International Union or to present their claim to a different body.  They also argue that the International Union's failure to raise a procedural challenge reflects its interpretation of the UAW Constitution that should be binding here.

Plaintiffs suggest in their response brief that the International Union also is being sued for its role in denying Plaintiffs' grievance (that being when the IEB upheld the local body's denial of their grievance).  This decision, they argue, is not by an International Officer, Regional Director, International Representative or

-14-

administrative arm of the National Department of the International Union.  As

such, Plaintiffs argue, they did not need to challenge the decision initially before

the IEB.  Plaintiffs argue that it also would be illogical to require them, after the

IEB's decision, to initiate a separate grievance against the International Union

concerning that decision in addition to appealing the decision itself.

       With respect to their NLRA claim, Plaintiffs contend that the International

Union lacks authority supporting its argument that exhaustion is required.

Plaintiffs argue that the International Union's motion fails to identify a basis for

dismissing their fraud claim.  Plaintiffs have not had the opportunity to respond to

the preemption argument recently asserted by the International Union.

## IV.    Applicable Law and Analysis

       Plaintiffs' § 301 LMRA claim alleges a breach of a labor agreement by their

employer and a breach of the duty of fair representation by the UAW.  Section 301

of the LMRA does not contain an explicit exhaustion requirement.  Nevertheless,

the Supreme Court has held that when suing an employer or union for breach of a

collective bargaining agreement, exhaustion of the grievance procedures set forth

in the agreement is required.  *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.

Ct. 614 (1965).  One rationale for requiring exhaustion of those grievance

procedures is that they, themselves, were the product of the bargaining process.  *Id*.

at 653, 85 S. Ct. at 616-17.  The *Republic Steel* Court further reasoned that federal labor policy favors requiring employees to "afford the union the opportunity to act on [their] behalf." *Id*. at 653, 85 S. Ct. at 616.

In *Clayton v. International Union*, 451 U.S. 679, 101 S. Ct. 2088 (1981), the Supreme Court addressed whether grievance procedures created by a union in its constitution– i.e., which were not bargained for as in *Republic Steel*– also require exhaustion in the § 301 context.  Such grievance procedures are designed to settle disputes between an employee and his or her union that arise under the union constitution.  *Id*. at 696, 101 S. Ct. at 2099.  The *Clayton* Court recognized a distinction between the procedures at issue in *Republic Steel* and those which "are wholly a creation of the [union c]onstitution."  *Id*. at 687, 101 S. Ct. at 2094.

The Court concluded that "the policy of forestalling judicial interference with internal union affairs is [not] applicable to these cases . . . involving the interpretation and application of a union constitution." *Id*. at 687-88, 101 S. Ct. at 2094-95.  Thus the *Clayton* Court held that "courts have the discretion to decide whether to require exhaustion of internal union procedures" before allowing a suit under § 301 of the LMRA alleging the union's breach of its duty of fair representation. *Id*. at 689, 101 S. Ct. at 2095.  The Court then identified factors relevant to deciding whether exhaustion should be required in a particular case:

> In exercising this discretion, *at least* three factors should be relevant: first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

*Id.* (emphasis added).  An employee's failure to exhaust the union's grievance procedures may be excused "[i]f any of these factors are found to exist."  *Id.*

Some courts have held that the *Clayton* factors are not exhaustive and that other considerations may warrant excusing exhaustion.  *See, e.g., Arnold v. United Mine Workers of Am.*, 293 F.3d 977, 980 (7th Cir. 2002) (citing *Hammer v. UAW*, 178 F.3d 856, 858 (7th Cir. 1999) ("Consistent with the Supreme Court's prescribed flexible approach, a court can excuse exhaustion if the plaintiff shows the futility of pursuing internal remedies . . . This is a fact specific inquiry, not limited to the Supreme Court's three factors."); *Lewis v. Local Union No. 100 of Laborers' Int'l Union of N. Am., AFL-CIO*, 750 F.2d 1368, 1380 (7th Cir. 1984) (citing *Local Union No. 1075, United Rubber, Cork, Linoleum and Plastic Workers of Am., AFL-CIO v. United Rubber, Cork, Linoleum and Plastic Workers of Am., AFL-CIO*, 716 F.2d 182, 186-87 (3d Cir. 1983)); *cf Peterson United Mine Workers of Am., Dist. 29*, No. 5:92-0390, 1992 WL 500488, at *1 (S.D. W. Va. Nov. 17,

-17-

1999) (unpublished opinion) ("The plaintiffs must raise at least one of these [*Clayton*] legally-recognized excuses for their failure to exhaust the internal union appeal procedures.").  The Seventh Circuit advised in *Lewis* that "in considering whether exhaustion was required, a court must look to the reasonableness of imposing it under the circumstances of the situation." 750 F.2d at 1380.  Relevant to the reasonableness inquiry is whether imposing the exhaustion requirement would, under the circumstances, further certain policies, such as enabling the union to rectify the wrong of which the employee complains, *Clayton*, 451 U.S. at 692 n.21, 101 S. Ct. at 2097 n.21, and encouraging "private resolution of disputes, responsible union self-regulation, union assistance in the interpretation of its governing document, and robust union processes." *Fulk v. United Transp. Union*, 108 F.3d 113, 117 (7th Cir. 1997).

The International Union contends that Plaintiffs failed to exhaust internal union procedures because they (1) did not *initiate* their grievance against the International Union with the IEB, but rather with the local unit; and (2) did not appeal any action by the International Union or its agent to the PRB, but rather only asserted a breach of the duty of fair representation by Local Union representatives.  Taking the second reason first, the Court finds that Plaintiffs did in fact grieve the conduct of International Union representatives in their appeal to

-18-

the PRB.  It appears that Plaintiffs' appeal focused on the conduct of Local Union officials (specifically the failure to keep members apprised of the negotiation process and to inform the membership of other offers made during the SAP negotiations).  Nevertheless, documents created during the grievance process which the parties append to their pleadings reflect that Plaintiffs also complained about statements by International Union representatives in connection with members' approval of the 2009 SAP and the bargaining policy developed by the International Union to deal with the conditions faced by GM and ACC in 2009. (*See, e.g.*, Int'l Union's Mot. Ex. D at 5, 11, 15.)

There can be no dispute that Plaintiffs did not comply with the UAW Constitution's grievance procedures which required them to initiate their challenge against International Union representative(s) first to the IEB.  At most these challenges were presented to the IEB only as an appeal of the local unit's decision. Nevertheless, for at least two reasons, the Court is declining to decide at this time whether this error in Plaintiffs' attempt to exhaust the union's internal grievance procedures results in the dismissal of their LMRA claim or whether it should be excused and the limitations period tolled.  First, the parties have not spent much (if any) time addressing the factors relevant to whether exhaustion should be excused. Second, the Court does not believe the International Union will suffer harm if

-19-

resolution of this issue is delayed because the Court finds that it has not

demonstrated a basis for dismissing Plaintiffs' NLRA and fraud claims.

The only authority the International Union cites to convince the Court that

the exhaustion requirement applies to Plaintiffs' NLRA claim is *Pratt v. UAW,*

*Local 1435*, 939 F.2d 385 (6th Cir. 1991).  In *Pratt*, however, the Sixth Circuit did

not conclude that the requirement applied to the plaintiff's Section 9(a) NLRA

claim.  Rather, the court of appeals stated: "[U]nder relevant law, Pratt [the

plaintiff] *may have been* required to exhaust intra-union remedies before

proceeding in the district court."  *Id*. at 390 (emphasis added) (citing *Clayton*, 451

U.S. at 681, 101 S. Ct. at 2091).  The panel remanded the matter to the district

court to determine whether, if required, exhaustion should be excused.  *Id*. at 391-

92.  It is not evident what the district court decided on remand, except that the

court did deny the defendant's motion for summary judgment as to the plaintiff's

NLRA claim and the claim proceeded to trial.  *See,* Mem. & Order, *Pratt v. UAW*

*Local 1435*, (April 28, 1992 N.D. Ohio), ECF No. 70.

In any event, the Court finds it significant that the International Union has

been unable to cite any case other than *Pratt* for the proposition that exhaustion of

intra-union remedies is required before pursuing a Section 9(a) claim.  This Court's

independent research also did not reveal a case holding the exhaustion requirement

applicable. In *Pratt*, the panel surmised that the law concerning Section 9(a) was still developing as it had only been clear that an action under the section could take place independent of Section 301 since the Supreme Court's decision two years earlier in *Breininger [v. Sheet Metal Workers Int'l*, 493 U.S. 67, 110 S. Ct. 424 (1989)]." *Pratt*, 939 F.2d at 391 n.2. However, twenty-four years has now passed since *Breininger*.

Finally, the Court concludes that the International Union has not adequately presented a basis for dismissing Plaintiffs' fraud claim. At this juncture, it appears that the International Union is arguing preemption as the sole basis for dismissing the claim.[1] The first time the International Union asserted this argument, however, was in a footnote to its reply brief. The Sixth Circuit has found issues waived when raised for the first time in a reply brief. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (citing cases). Even if not waived, Plaintiffs

---

[1] At the motion hearing, counsel for the International Union stated that she does not believe the exhaustion requirement applies to Plaintiffs' fraud claim. The International Union also argued in its initial motion and reply brief (although, again, only in footnotes) that Plaintiffs' fraud claim fails because "the Complaint does not assert a valid claim of joint and several liability." (Int'l Union's Br. in Supp. of Mot. at 18 n.10; *see also* Reply Br. at 1 n.1) Nevertheless, this argument was not asserted in the International Union's supplemental brief filed in response to Plaintiffs' Second Amended Complaint. Moreover, the Court believes that Plaintiffs' amended pleading addresses the International Union's joint and several liability argument by identifying independent actions of International Union representatives as the basis for their claims.

-21-

undoubtedly have not had an opportunity to present their arguments on the

preemption issue.

**V.      Conclusion**

For the reasons discussed, the Court declines to rule at this time on the

International Union's motion to dismiss Plaintiffs' LMRA or common law fraud

claims (Counts I and III, respectively).  The parties have not adequately addressed

whether exhaustion should or should not be excused based on relevant factors.

The International Union asserted preemption as the basis for dismissing Plaintiffs'

fraud claim only in a footnote to its reply brief and in a supplemental pleading to

which Plaintiffs have not had the opportunity to respond.

Nevertheless, the Court rejects the International Union's motion to dismiss

Plaintiffs' NLRA claim based on a failure to exhaust the grievance procedures set

forth in the UAW Constitution.

**SO ORDERED**.

Dated: December 18, 2013                    s/PATRICK J. DUGGAN
                                           UNITED STATES DISTRICT JUDGE


Copies to:
Kenneth D. Myers, Esq.
Andrew A. Nickelhoff, Esq.
Mami Kato, Esq.
Thomas A. Cattel, Esq.
Kim F. Ebert, Esq.
Douglas Y. Christian, Esq.

-22-