**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LAWRENCE KOSA, et al.,

    Plaintiffs,

v.                                             Case No. 13-11786

INTERNATIONAL UNION, et al.,

    Defendants.

_____/

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION
AND DENYING DEFENDANTS' MOTION TO CORRECT/AMEND**

This labor dispute was originally assigned to Judge Patrick J. Duggan, who saw this case through its early stages, deciding a number of dispositive motions. Shortly after Judge Duggan decided Defendant's Motion for Summary Judgment, he retired from the federal bench and the case was transferred to this court. Plaintiffs, who are former employees or retirees of Automotive Component Carrier, LLC ("ACC"), the entity that purchased the truck fleet operations of General Motors ("GM") in April 1996, filed suit alleging violations of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.*, the National Labor Relations Act ("NLRA"), 29 U.S.C. § *151 et seq.*, and Michigan law relating to alleged breaches of fair representation by virtue of Defendants having provided erroneous information to Plaintiffs regarding their contractual right to transfer back or "flow back" to GM. (Dkt. #33.) Defendants are labor unions who represented Plaintiffs in negotiating and approving various labor agreements at issue in this case.

Before the court is Plaintiffs' Motion for Reconsideration, (Dkt. #73), and Defendants' Motion to Correct Mistake in Court's Opinion, (Dkt. #79). Defendants have filed a response to Plaintiffs' motion, (Dkt. #77), but Plaintiffs have not filed a reply. Plaintiffs have responded to Defendants' motion, (Dkt. #80), and Defendants have filed a reply, (Dkt. # 81). The matters have been briefed and the court concludes a hearing on the motions is unnecessary. See E.D. LR7.1(f)(2). For the reasons stated below, the court will deny both motions.

## I. BACKGROUND

The underlying facts of the instant case are explained in detail in this court's prior Opinion and Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment and Denying Defendants' Motion for Sanctions, (Dkt. #72), familiarity with which is presumed. In an opinion penned by Judge Duggan, the court granted summary judgment against certain Plaintiffs referred to as "Yellow Dots" and their claim for violation of the duty of fair representation because they lacked flow back rights under the terms of the various agreements between GM and ACC and therefore lacked a claim for any failure of Defendants to inform them as to these rights. *Id.* It also found that "[b]y contrast, the 1996 MOU grants Red Dots a contractual right to flow back" and therefore most Red Dots would survive summary judgment as to this claim.[1] *Id.* Plaintiffs now argue for reconsideration on the basis that: 1) the court misinterpreted the agreements between ACC and GM when it determined that Yellow Dots lacked flow

---

[1] The court granted Summary Judgment against three Red Dots who had retired before 2009, when the allegedly tortious conduct occurred.

back rights; and 2) even absent flow back rights, Defendants still failed in their duty to inform Yellow Dots of their rights generally. (Dkt. #73.)

Defendants request that the court correct Judge Duggan's opinion pursuant to Federal Rule 60(a) on the basis that the court had mistakenly failed to consider interrogatory responses from certain Red Dots which indicated that they had not made the written application to GM to exercise their flow back rights as required under the terms of the agreements and consequently had forfeited those rights. (Dkt. #79.) Defendants urge this court to conclude that summary judgment is appropriate as to these Red Dots because, like Yellow Dots, they could not have possibly been harmed by Defendants' failure to advise them as to flow back rights they no longer had. *Id.*

## II. STANDARD

### A. Motion for Reconsideration

Subject to the court's discretion, a motion for reconsideration shall be granted only if the movant "demonstrate[s] a palpable defect by which the court and the parties . . . have been misled" and "show[s] that correcting the defect will result in a different disposition of the case." E.D. Mich. L.R. 7.1(h)(3). "A 'palpable defect' is 'a defect that is obvious, clear, unmistakable, manifest or plain.'" *Buchanan v. Metz*, 6 F. Supp. 3d 730, 752 (E.D. Mich. 2014) (quoting *United States v. Lockett*, 328 F. Supp. 2d 682, 684 (E.D. Mich. 2004)). The court "will not grant motions for . . . reconsideration that merely present the same issues ruled upon by the court." E.D. Mich. L.R. 7.1(h)(3).

**B. Federal Rule of Civil Procedure 60(a)**

Courts may also "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). "The basic purpose of the rule is to authorize the court to correct errors that are mechanical in nature that arise from oversight or omission." *In re Walter*, 282 F.3d 434, 440 (6th Cir. 2002) (citation omitted). "The rule does not, however, authorize the court to revisit its legal analysis or otherwise correct an 'error[] of substantive judgment.'" *Id.* (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 364 (6th Cir. 1990)).

### III. DISCUSSION

### A. Motion for Reconsideration

Plaintiffs argue that Judge Duggan's opinion suffers from a "palpable defect" insofar as it reasoned that the 2004 Contract for Transportation Services ("the Agreement") did not grant flow back rights to Yellow Dots. In their view, the Agreement required GM to offer Yellow Dots jobs as they became available and continue to subsidize the employment of Yellow Dots at ACC. Assuming that Yellow Dots did have flow back rights, the court's reasoning would have been faulty in its determination that, because they lacked these rights, they had no fair representation claim for Defendants' alleged failure to apprise them of the same. Going one step further, they claim that even absent strict flow back rights, Defendants should have apprised them of the potential existence of flow back rights anyway, and failing to do so caused harm.

Defendants respond that the opinion's contractual interpretation is correct, or at the very least reasonable, and therefore does not meet the "palpable defect" standard.

They also argue in the alternative that even if the Agreement conferred flow back rights on Yellow Dots, the claim still fails because the pertinent sections of the Agreement were terminated as part of the 2009 ACC Global Commercial Agreement in May of 2009, so Yellow Dots could not possibly have had flow back rights during their meeting in June of 2009 when Plaintiffs allege Defendants failed in their duties as representatives. Having not filed any reply brief, Plaintiffs do not respond to these arguments.

It is clear that if it were true that the Yellow Dot Plaintiffs did have flow back rights, the reasoning of Judge Duggan's opinion dictates that their fair representation claim would survive summary judgment just as the claim by Red Dots did. Therefore, the "result[ing] in a different disposition of the case" prong has been met and the court will turn its attention to whether the Plaintiffs have "demonstrate[d] a palpable defect by which the court and the parties . . . have been misled."

The operative language of the Agreement is somewhat vague.[2] However, this issue was discussed at length in the parties' briefs leading up to the issuance of Judge Duggan's opinion. (Dkts. #58, 61, 67.) The court concluded that the Agreement

---

[2]"After the Effective Date [February 1, 2004], any such EBU Employee who is not eligible for retirement or who does not accept the retirement package from ACC will be offered active employment by GM as jobs become available . . . with the goal that all offers to such EBU Employees will be completed within 18 months after [February 1, 2004], but in no event later than the expiration of the term of this Agreement [January 31, 2009]. For those remaining EBU Employees that are not offered employment by GM either during the initial 18 months or the term of this Agreement, GM agrees that it shall remain responsible for (i) its obligations for such EBU Employees ('red dot' and 'yellow dot' only) under the [1997 Agreement], the [1996 Asset Purchase Agreement], and the [1996 MOU]; and (ii) its obligations for the Labor Surcharge and Management Fees related to such EBU Employees ('red dot' only)." (Dkt. #58-23.)

reflected "the possibility of something that appears to be similar to flow back" for Yellow Dots as well, but ultimately found that GM had a choice to either hire these Yellow Dots or continue to subsidize their employment at ACC. (Dkt. #72.) A deficiency in Plaintiffs' summary judgment briefs on this issue was noted in Judge Duggan's opinion, which stated that it neither found the language of the Agreement consistent with Plaintiff's interpretation ". . . nor do Plaintiffs explain why they believe their interpretation is correct." (Dkt. #72.) Similarly, here Plaintiffs do not offer citations to relevant contract interpretation law in support of their claim that the court misread the Agreement. Absent a contrary guiding principle, no reason exists to view as erroneous the interpretation adopted by judge Duggan's opinion. Plaintiffs are "essentially rehashing the arguments previously raised[.]" *See Intercontinental Electronics, S.p.A. v. Roosen*, 210 Fed.App'x 491, 495 (6th Cir. 2006).

Even if this court were to find Plaintiffs' suggested interpretation to be as persuasive as the one adopted by Judge Duggan's opinion (and it does not), Plaintiffs have offered insufficient grounds to find that Judge Duggan's adoption of Defendants' interpretation constitutes a defect which is "obvious, clear, unmistakable, manifest or plain." *See Buchanan*, 6 F. Supp. 3d at 752; *see also Henderson v. Walled Lake Consol. Schools*, 469 F.3d 479, 496 (6th Cir. 2006) (finding that the "palpable defect" standard is consistent with requiring either "1) a clear error of law; 2) newly discovered evidence; 3) an intervening change in controlling law; or 4) a need to prevent manifest injustice.") (citation omitted). The provision states that Yellow Dots "will be offered active employment . . . as jobs become available" but it goes on to contemplate alternatives for Yellow Dots who are not hired. It is of course reasonable to infer a degree of discretion

and business judgment on GM's part in determining which and how many Yellow Dots to hire. Therefore, the motion is denied as to this portion of Judge Duggan's opinion.

Plaintiffs assert that Yellow Dots' ownership of flow back rights is not a prerequisite to their fair representation claim. It is fair to say that the crux of Plaintiffs' claim is that "the unions failed to inform their members . . . of valid and viable offers of buyouts and buydowns and placement of members in GM facilities  . . . and made material misrepresentations to plaintiffs about the terms of the [new agreement], the consequences of not ratifying it and/or signing it, and the timing and terms of rescinding the agreement and by not allowing plaintiffs to rescind." (Dkt. #33.) Addressing this issue, Judge Duggan's opinion held that "UAW is entitled to summary judgment with regard to the claims of the 163 Yellow dots that UAW failed to advise them of a flow back option." (Dkt. #72.)  It is true that the existence of flow back rights is not strictly required for each of these allegations to succeed, but Judge Duggan's opinion summarized these and addressed them all in turn. The opinion suffers from no "palpable defect" on the theory that it considered only flow back rights as opposed to the informational role of the Defendants generally. Finally, Plaintiffs cite to no authority for the proposition that a union is required to inform its members of rights that they do not possess. Plaintiffs cannot support a claim that Yellow Dots were harmed by unwittingly bargaining away rights if they did not possess those rights in the first place under the terms of the Agreement. Here again the reasoning of Judge Duggan's opinion suffers from no defect which is "obvious, clear, unmistakable, manifest or plain." *See Buchanan*, 6 F. Supp. 3d at 752. Therefore, the court denies Plaintiffs' motion for reconsideration on this ground as well.

### B. Motion to Correct Opinion

The Sixth Circuit has held that a court may "modify its order under Rule 60(a) if: (i) the error was mechanical in nature rather than the result of a deliberate choice, and (ii) the modification corrects the [earlier] order such that it reflects what was the intent of the [court] at the time . . ." *In re Walter*, 282 F.3d 434, 441 (6th Cir. 2002). Defendants assert that Judge Duggan's opinion mistakenly overlooked certain Red Dot interrogatory responses when it concluded that they retained flow back rights in 2009, and this error was so severe as to be necessarily mechanical in addition to rendering the court's ultimate holding inconsistent with the rest of the opinion's reasoning.

Plaintiffs respond that Defendants merely seek a defacto interlocutory appeal of a deliberate factual determination which was discussed in Defendants' briefs and summarized within Judge Duggan's opinion along with a statement that, for the time being, the court would resolve the difficult questions of fact in favor of the Plaintiffs. Plaintiffs also speculate that at the time the court may have been unimpressed with Defendants' waiver argument, because any failure of Red Dots to preserve their flow back rights necessarily suggests that Defendants breached their duty of fair representation. In light of the fact that the opinion was issued by a judge who has since retired, this latter argument invites the court to embark on a journey of unverifiable guesswork and does not warrant serious consideration.[3]

### 1. Mechanical Error

---

[3]For example, a possible alternative explanation is that *perhaps* the court *might have* instead believed any failure of some Red Dots to preserve their flow back rights was the result of their conclusion that doing so was not worth their effort. Such determinations are beyond the court's ken at this point.

In applying the Federal Rules of Civil Procedure, this court is bound by the holdings of the Sixth Circuit. Whatever the merits of Defendants' arguments regarding the applicability or persuasiveness of the interrogatory responses when the court addressed this question in the first instance, the court cannot now reasonably find that any "error was mechanical in nature rather than the result of a deliberate choice[.]" *In re Walter*, 282 F.3d at 441. Defendants do not cite to a single case where a court has used Rule 60(a) in the suggested manner. The Sixth Circuit in *In re Walter*, the only Sixth Circuit case cited by Defendants, explained that "the error in this case is simple: the bankruptcy court struck only one reference to [appellant] in the [order] instead of two." 282 F.3d at 442. Asking the court to incorporate interrogatory responses that were arguably ignored in a previous opinion issued by a different judge is a far cry from the situation blessed in that case. The Sixth Circuit has explained:

> The basic distinction between clerical mistakes and mistakes that cannot be corrected pursuant to Rule 60(a) is that the former consist of blunders in execution whereas the latter consists of instances where the court changes its mind, either because it made a legal or factual mistake in making its original determination, or because on second thought it has decided to exercise its discretion in a manner different from the way it was exercised in the original determination.

*Id.* at 440 (internal quotations omitted). "Thus, a proper Rule 60(a) order involves the purely ministerial act of correcting a clerical mistake; it does not alter the substantive rights of the parties or resolve any of the disputes in the case." *In re LWD, Inc.*, 335 Fed. App'x 523, 527 (6th Cir. 2009). Granting Defendants' requested relief under Rule 60(a) would plainly alter the substantive rights of the eleven Red Dots who would have their claims extinguished by an entry of summary judgment against them.

9

It would also constitute either the correction of a factual mistake or change in exercise of discretion. Though Judge Duggan's opinion does not address the interrogatory responses directly, it does contemplate Defendant's arguments that "'very very few applications' were submitted by the deadline," states that the court viewed the record as "unclear" on the issue, observes that it was bound to "constru[e] the evidence in light most favorable to Plaintiffs," and then arguably makes a misstatement which is central to Defendants' motion by stating that it would assume that the Red Dots had submitted timely applications "in light of the absence of any contrary evidence[.]" (Dkt. #72 Pg. ID 2198.)

The Sixth Circuit has explicitly declined to use Rule 60(a) as an instrument to revisit a judgment it was convinced was erroneous. In *Miltimore Sales, Inc. v. International Rectifier, Inc.*, the court stated that although it "agree[d] with [appellant] that from the record it appears that the damages judgment did not fully reflect the jury verdict[,]" Rule 60(a) "does not allow courts to 'correct an error of substantive judgment[,]'" and therefore the court could not "make the substantive change . . ." 119 Fed. App'x 697, 701 (6th Cir. 2004). Here, as there, the court may not upset the earlier substantive judgment that the record was unclear, even if it was arguably erroneous in light of the interrogatory responses of eleven Red Dots. This alone is sufficient to deny Defendants' motion, but this court will now also address the question of whether the proposed modification would reflect the court's intent at the time that Judge Duggan's opinion was issued.

### 2. Intent

10

*In re Walter* held that the court could use Rule 60(a) where it "state[d] in clear and unequivocal language that it intended to remove [appellant] entirely from the force of the order, and that the order, as modified, did not reflect that intent." *Id.* However, the record here lacks any statement by the court indicating an intent to view these interrogatory responses as dispositive. In fact, the opinion's discussion of this issue as summarized above reflects quite the contrary: that the court, in light of what it viewed as a murky record, intended to allow these parties to present this issue to a finder of fact.

Defendants' citations to non-binding precedent from other circuits does little to support the use of Rule 60(a) in these circumstances. A Seventh Circuit case cited by Defendants merely holds that a correction was permitted where it "just made explicit what the parties must have assumed," which was that one party was required to refund earnest money as a result of the ruling. *Shuffle Tech Intern., LLC v. Wolff Gaming, Inc.*, 757 F.3d 708, 712 (7th Cir. 2014). In another case cited by Defendants, the Ninth Circuit held that the court was permitted to use Rule 60(a) to modify a judgment to include damages where "the district court always intended to grant [plaintiff] damages" as the court had attempted to resolve an issue of determining damages in the absence of any credible evidence of a horse's value "by entering judgment granting title, ownership, and right of possession to [plaintiff] so the company could try to resell the horse at the next available auction" and "instructing [plaintiff] to move to amend the judgment later . . . to supply evidence of the horse's lost value." *Tattersalls Ltd. V. DeHaven*, 745 F.3d 1294, 1295-96 (9th Cir. 2014). Finally, in *Pfizer Inc. v. Uprichard*, which Defendants also cite, the Third Circuit concluded that although "[i]t is well established that where a party seeks to alter a judgment to reflect the District Court's

11

grant of pre-judgment interest, Rule 60(a) is the proper avenue for making such a request[,]" the magistrate had "overstepped his authority . . . by requiring that [defendant sign plaintiff's settlement agreement] as a condition to receiving her arbitration award." 422 F.3d 124, 130 (3rd Cir. 2005). It is clear that none of these cases reflect facts analogous to those at issue here and therefore are unpersuasive on this point. Thus, the court denies Defendants' motion to correct under Rule 60(a).

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Plaintiffs' Motion for Reconsideration (Dkt. # 73) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Correct/Amend (Dkt. #79) is DENIED.

      s/Robert H. Cleland  
      ROBERT H. CLELAND  
      UNITED STATES DISTRICT JUDGE

Dated:  September 22, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 22, 2016, by electronic and/or ordinary mail.

      s/Lisa Wagner  
      Case Manager and Deputy Clerk  
      (313) 234-5522